**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:21-cr-696 |
| | ) | |
| | ) | |
| Plaintiff, | ) | CHIEF JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| DEVEN L. SMITH, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

*Pro se* defendant Deven Smith ("Smith") moves to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. (Doc. No. 58 (Motion); Doc. No. 58-1 (Memorandum in Support).) Plaintiff United States of America (the "government") opposes Smith's motion. (Doc. No. 60 (Response).) For the reasons set forth below, the motion to vacate is denied.

## I.       BACKGROUND

On September 30, 2021, an indictment issued charging Smith with possession with intent to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count 1), possession with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count 2), and possession with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count 3); as well as one count each of using or carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count 4), and being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count 5). (Doc. No. 1 (Indictment).)

Throughout the proceedings in this Court, Smith was represented by various attorneys from the Federal Public Defender's ("FPD") Office. Prior to the arraignment on June 17, 2022, Assistant FPD Christian Grostic entered an appearance on behalf of Smith. (Minutes of Proceedings [non-document], 6/17/2022; Order [non-document], 6/17/2022.) On June 22, 2022, then-Assistant FPD Khalida Sims Jackson entered an appearance replacing Assistant FPD Grostic. (Doc. No. 13 (Notice of Appearance).) Sims Jackson represented Smith through his guilty plea hearing. On November 9, 2022, prior to sentencing, then-First Assistant FPD Jacqueline Johnson entered an appearance on behalf of Smith replacing Sims Jackson, who had left the FPD's Office. (Doc. No. 26 (Notice of Appearance); *see* Doc. No. 52 (Sentencing Hearing Transcript), at 12–13.)[1]

On September 27, 2022, Smith entered an open plea of guilty (without a plea agreement) to the charges in the Indictment. (Minutes of Proceedings [non-document], 9/27/2022; *see* Doc. No. 20 (Notice of Intent to Plea without Written Plea Agreement).) Before accepting his plea, the magistrate judge engaged Smith in a thorough colloquy under Fed. R. Crim. P. 11. (*See generally* Doc. No. 25 (Change of Plea Hearing Transcript).) At the conclusion of the hearing, the magistrate judge received Smith's guilty plea, finding that it was knowing and voluntary. (*Id*. at 31; *see* Doc. No. 24 (Report and Recommendation ("R&R")).) On December 16, 2022, the Court adopted the R&R recommending the acceptance of Smith's guilty plea. (Doc. No. 29 (Order).)

Prior to sentencing, the Court ordered the preparation of a Presentence Investigation Report ("PSR"), and defense counsel filed a sentencing memorandum and a supplement. (Doc. No. 43 (Sentencing Memorandum); Doc. No. 44 (Sealed Supplement); *see* Doc. No. 41 (Final Revised

---

[1] All page number references herein are to the consecutive page numbers applied to each individual document by the Court's electronic docketing system.

PSR).) On May 31, 2023, the Court sentenced Smith to a custody term of 151 months as to Counts 1–3 and 5 of the Indictment, and 60 months as to Count 4, to be served consecutive to Counts 1–3, and 5, for a total aggregate term of imprisonment of 211 months.[2] (Doc. No. 45 (Judgment); Minutes of Proceedings [non-document], 5/31/2023.)

At sentencing, the Court began with a calculation under the advisory sentencing guidelines. Starting with a base offense level 18, an enhancement under U.S.S.G. § 4B1.1(c)(3) was applied by virtue of Smith's status as a career offender and a three-level reduction under U.S.S.G. §§ 3E1.1(a)–(b) was applied for acceptance of responsibility, making the adjusted total offense level 29. (Doc. No. 52, at 5; *see also* Doc. No. 41, at 6–7 ¶¶ 18, 23–27.) Smith had multiple prior felony drug trafficking convictions, as well as felony convictions for having weapons while under a disability, which collectively scored 14 criminal history points. (*See also* Doc. No. 41, at 11–17 ¶¶ 41, 44–45, 49–50.) With a criminal history score of 14, Smith was a criminal history category VI. (*See also id*. at 17 ¶ 51; Doc. No. 52, at 6.) His criminal history category was VI for the additional reason that he was a career offender. (*See also id*. at 17 ¶ 52; *see* Doc. No. 52, at 6.) With a total offense level of 29 and a criminal history category of VI, Smith's advisory sentencing range for Counts 1–3 and 5 would have been 151 to 188 months, to be served consecutive to a minimum 60-month sentence for Count 4, resulting in a guideline range of 211 to 248 months. (*See also* Doc. No. 41, at 25 ¶ 97.) But because Smith was a career offender and being sentenced for a § 924(c) conviction, in addition to other offenses, pursuant to U.S.S.G. § 4B1.1(c)(3), his advisory guideline range became 262 to 327 months. (*See also id*. at 25 ¶¶ 96–97; Doc. No. 52, at 5.) Nevertheless,

---

[2] The sentence was also to be served concurrently with an undischarged term of imprisonment in Lake County Court of Common Pleas Case No. 22-cr-593. (Doc. No. 45, at 2.)

the Court varied downward to arrive at Smith's below-guideline sentence. (Doc. No. 52, at 31–32.)

Following an unsuccessful direct appeal before the Sixth Circuit Court of Appeals and a denied request for certiorari review by the United States Supreme Court, Smith filed the present motion to vacate on October 17, 2025.[3] (Doc. No. 58; *see* Doc. No. 54 (Sixth Circuit Decision); Doc. No. 57 (Denial of Writ).) He raises three grounds for relief, each anchored in the Sixth Amendment's guarantee of effective assistance of counsel. (*See generally* Doc. Nos. 58, 58-1.) At Smith's request, the Court granted numerous extensions of the briefing schedule. (Order [non-document], 12/23/2025; Doc. No. 63 (Order); Order [non-document], 1/27/2026; Order [non-document], 2/24/2026; Order [non-document], 4/2/2026; *see* Doc. No. 59 (Scheduling Order).) Notwithstanding these extensions, Smith failed to file a reply. The motion is now fully at issue.

## II.      STANDARDS OF REVIEW

### A.  Motion to Vacate Under 28 U.S.C. § 2255

A federal prisoner may attack the validity of his sentence by filing a motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 in the district court where he was sentenced. Section 2255 sets forth four grounds upon which a federal prisoner may state a claim for relief: "[1] the sentence was imposed in violation of the Constitution or laws of the United States, or [2] that the court was without jurisdiction to impose such sentence, or [3] that the sentence was in

---

[3] The prison mailbox rule, announced in *Houston v. Lack*, 487 U.S. 266, 270–72, 108 S. Ct. 2379, 101 L. Ed. 2d 245 (1988), provides that a federal prisoner's *pro se* motion to vacate is ordinarily deemed filed on the date that it was submitted to prison mailing officials. *See Towns v. United States*, 190 F.3d 468, 469 (6th Cir. 1999). While Smith's motion was filed on the docket on October 28, 2025, the motion provides that it was placed in the prison mailing system on October 17, 2025. (Doc. No. 58, at 13.)

excess of the maximum authorized by law, or [4] [the sentence] is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255(a).

To prevail under § 2255, "a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993)). "Relief is warranted only where a petitioner has shown 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Id*. (quoting *Davis v. United States*, 417 U.S. 333, 346, 94 S. Ct. 2298, 41 L. Ed. 2d 109 (1974)).

The movant bears the burden of articulating sufficient facts to state a viable claim for relief under § 2255. *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (per curiam). Vague and conclusory claims that are not substantiated by allegations of specific facts with some probability of verity are not enough to warrant relief. A § 2255 motion may be dismissed if it only makes conclusory statements without substantiating allegations of specific facts and fails to state a claim cognizable under § 2255. *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961); *see Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972).

When a defendant challenges the validity of a plea, the representations of the defendant, his lawyer, the prosecutor, and the judge "constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S. Ct. 1621, 52 L. Ed. 2d 136 (1977). Such "[s]olemn declarations in open court carry a strong presumption of verity." *Id*. Subsequently presented conclusory allegations that fly in the face of the record are subject to summary dismissal. *Id*. (citations omitted).

5

When a factual dispute arises in a § 2255 proceeding, an evidentiary hearing is required "'to determine the truth of the petitioner's claims.'" *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (quoting *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999)). The burden borne by a § 2255 petitioner to obtain a hearing is not onerous. *See Smith v. United States*, 348 F.3d 545, 551 (6th Cir. 2003) (citing *Turner,* 183 F.3d at 477). However, a petitioner is not entitled to an evidentiary hearing if he has not alleged any facts that, if true, would entitle him to federal habeas relief. *See McSwain v. Davis*, 287 F. App'x 450, 458 (6th Cir. 2008); *Amr v. United States*, 280 F. App'x 480, 485 (6th Cir. 2008) (holding that an evidentiary hearing was "unnecessary" where there was "nothing in the record to indicate that [the petitioner] would be able to prove his allegations" at a hearing); *see also Napier v. United States*, No. 93-5412, 1993 WL 406795, at *2 (6th Cir. Oct. 8, 1993) ("To be entitled to a hearing, the prisoner must set forth detailed factual allegations which, if true, would entitle him to relief under § 2255." (citing, among authorities, *Machibroda v. United States*, 368 U.S. 487, 496, 82 S. Ct. 510, 7 L. Ed. 2d 473 (1962))); *see also Valentine*, 488 F.3d at 334 (finding that the burden is met where the petitioner "offers more than a mere assertion of his innocence; he presents a factual narrative of the events that is neither contradicted by the record nor 'inherently incredible'").

Moreover, a hearing is not necessary when a petitioner's claims "'cannot be accepted as true because they are contradicted by the record, inherently incredible, or [are] conclusions rather than statements of fact.'" *Valentine*, 488 F.3d at 333  (quoting *Arrendondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)). Where, as here, the judge considering the § 2255 motion also presided over pretrial proceedings and sentencing, the judge may rely on her recollections of those events. *See Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996) (citing *Blackledge*, 431 U.S.

at 74 n.4).

The Court finds that an evidentiary hearing is not warranted in the present case. As set forth in detail below, Smith has failed to identify facts that, if true, would entitle him to relief under § 2255. Moreover, many of the arguments offered by Smith in support of the present motion are either contradicted by the record or are averred to in a perfunctory and conclusory manner, preventing further review by this Court.

### B.  Ineffective Assistance of Counsel

"To prevail on an ineffective-assistance-of-counsel claim, [a petitioner] must satisfy the two-pronged test announced in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)." *Wingate v. United States*, 969 F.3d 251, 255 (6th Cir. 2020). Specifically, the petitioner must demonstrate: (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Strickland*, 466 U.S. at 687–88; *see Williams v. Taylor*, 529 U.S. 362, 390–91, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). The Court may address the *Strickland* prongs in any order and need not address both prongs if the petitioner "makes an insufficient showing on one." *See Wingate*, 969 F.3d at 255 (quotation marks and citation omitted).

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010). "Judicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id.* Counsel's performance must be evaluated from the perspective existing at the time of the representation, not from the perspective of hindsight. *Id.*

Indeed, a prisoner must show that counsel made errors so serious that he was not functioning as the counsel guaranteed by the Sixth Amendment, and that counsel's errors were so serious as to deprive him of a fair trial. *Strickland*, 466 U.S. at 687–88; *United States v. Hanley*, 906 F.2d 1116, 1120–21 (6th Cir. 1990); *Flippins v. United States*, 808 F.2d 16, 18 (6th Cir. 1987); *see also United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) ("Counsel is constitutionally ineffective only if performance below professional standards caused the defendant to lose what he otherwise would probably have won." (citing *Strickland, supra*)).

A criminal defendant has the right to effective assistance of counsel at "all 'critical stages of the criminal proceedings.'" *Missouri v. Frye*, 566 U.S. 134, 140, 132 S. Ct. 1399, 182 L. Ed. 2d 379 (2012) (quoting *Montejo v. Louisiana*, 556 U.S. 778, 786, 129 S. Ct. 2079, 173 L. Ed. 2d 955 (2009) (further citations omitted)). Included within the definition of a "critical stage" are plea negotiations. *See Byrd v. Skipper*, 940 F.3d 248, 255 (6th Cir. 2019) ("But the Sixth Amendment's requirement that defendants receive the effective assistance of competent counsel extends to all critical stages of a criminal proceeding, including pretrial plea negotiations." (quotation marks and citations omitted)); *see also Hill v. Lockhart*, 474 U.S. 52, 58, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985) (noting that the *Strickland* standard applies during the plea bargaining process).

When a defendant enters a guilty plea, his counsel must perform within "the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson*, 397 U.S. 759, 771, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970). A petitioner need not show he would have prevailed at trial, but a petitioner alleging ineffective assistance of counsel must establish his counsel's deficient performance and that "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59 (quotation marks and citations omitted).

### III.  DISCUSSION

Smith's Grounds One and Three challenge the effectiveness of then-Assistant FPD Sims Jackson during plea negotiations through the change of plea hearing, while Ground Two challenges the effectiveness of the legal assistance Smith received from then-First Assistant FPD Johnson at sentencing. The Court will address each ground separately, starting with the two grounds involving Assistant FPD Sims Jackson.

### A.  Conflict of Interest (Ground One)

In his first ground for relief, Smith alleges that Sims Jackson had a conflict of interest that adversely affected her performance. (Doc. No. 58, at 4; *see* Doc. No. 58-1, at 9–13.) In support, he suggests that counsel "appeared" to take "issue with [Smith] being charged with drug offenses, which made it difficult to communicate with her." (Doc. No. 58-1, at 9 ¶ 28.) He complains that counsel repeatedly encouraged him to offer assistance to the government, and her "tone grew harsher" when he advised her that he had no useful information to proffer to the government. (*Id.* at 9–10 ¶¶ 28–29 (indicating counsel "yelled and used profanity and ended the visit without offering any advice"). Moreover, he guesses that counsel only provided him with discovery because she "[a]pparently" heard that Smith "was attempting to replace her as counsel[.]" (*Id.* at 10 ¶ 30.) He also claims that when he asked counsel to file a suppression motion, counsel represented that she would have an investigator "look into" it but never filed the motion. (*Id.* at 10–11 ¶¶ 30–31.) According to Smith, counsel told him that she did not file the motion because he was caught with drugs and a firearm and such a motion would only anger the prosecutors. (*Id.* at 11 ¶ 31.) Smith also maintains that counsel threatened him, warning that "she was not the person to mess with." (*Id.* at 11 ¶ 32.) Based on his belief that counsel had no intention of taking a case

9

like his to trial, he now claims that he had no choice but to accept an open plea. (*Id*. at 12 ¶ 35.)[4]

"Where a constitutional right to counsel exists, [the Supreme Court's] Sixth Amendment [case law] hold[s] that there is a correlative right to representation that is free from conflicts of interest." *Wood v. Georgia*, 450 U.S. 261, 271, 101 S. Ct. 1097, 67 L. Ed. 2d 220 (1981) (citing *Cuyler v. Sullivan*, 466 U.S. 335, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980); *Holloway v. Arkansas*, 435 U.S. 475, 481, 98 S. Ct. 1173, 55 L. Ed. 2d 426 (1978)). Because this case does not involve multiple representation, to demonstrate that he received ineffective assistance from conflicted counsel, Smith must show both that his attorney had an actual conflict and that he was prejudiced by that conflict. *See Whiting v. Burt*, 395 F.3d 602, 618–19 (6th Cir. 2005) (noting prejudice can only be presumed in certain cases involving multiple representation); *see Leonard v. Warden, Ohio State Penitentiary*, 846 F.3d 832, 844 (6th Cir. 2017) ("To prevail on a claim that he was denied his right to conflict-free counsel, a defendant must demonstrate 'an actual conflict of interest.'" (citation omitted)). "An 'actual conflict,' for purposes of the Sixth Amendment, is 'a conflict of interest that adversely affects counsel's performance.'" *Leonard*, 846 F.3d at 844 (quoting *Mickens v. Taylor*, 535 U.S. 162, 172 n.5, 122 S. Ct. 1237, 152 L. Ed. 2d 291 (2002)). "[T]he possibility of conflict is insufficient to impugn a criminal conviction." *Sullivan*, 446 U.S. at 350.

Smith offers little more than his bare assertion that counsel was operating under a conflict because he believed she harbored ill-will toward individuals charged with drug trafficking. Beyond encouraging him to cooperate with the government—which, in and of itself, can represent an effective strategy for receiving consideration at sentencing—Smith only points to the "harsh" tone

---

[4] Smith offers an affidavit in support of his allegations in Grounds One and Three. (Doc. No. 58-1 (Affidavit), at 25–30.)

and charged language counsel used with him and the less than harmonious interactions the two exchanged. But the Sixth Amendment does not guarantee a criminal defendant a good rapport or a "meaningful relationship" with his attorney. *Morris v. Slappy*, 461 U.S. 1, 13–14, 103 S. Ct. 1610, 75 L. Ed. 2d 610 (1983). "The mere fact that an attorney dislikes or distrusts his client does not establish ineffective assistance of counsel or a conflict of interest, absent a showing of how this animosity affected counsel's performance." *Davis v. Chapman*, No. 18-10391, 2019 WL 1923184, at *13 (E.D. Mich. April 30, 2019) (rejecting as insufficient representations that counsel "showed disinterest in [petitioner's] case, expressed contempt for [p]etitioner, . . . , and told [p]etitioner he was guilty" (citation omitted)); *see Lester v. Jabe*, 23 F.3d 407 (Table), 1994 WL 142821, at *2 (6th Cir. Apr. 19, 1994) (rejecting argument that counsel had an actual conflict based on "allegations [that] amount to little more than an assertion that he did not get along with his counsel" (citing *Morris*, 461 U.S. at 13–14)).

Moreover, these new allegations regarding Smith's alleged dissatisfaction with counsel's performance are contradicted by the record at the change of plea hearing. After confirming that Smith had enough time to discuss the charges and his responses to those charges with counsel, the magistrate judge inquired as to whether Smith was "completely satisfied with [his] attorney's representation and the advice that's been given" to him. (Doc. No. 25, at 13.) Smith answered in the affirmative. (*Id.*) The magistrate judge further confirmed that Smith's decision to plead guilty was "a result of an exercise of [his] own free will[,]" and that nobody threatened him or forced him to plead guilty. (*Id.* at 19.) These representations, made under oath at the change of plea hearing, are entitled to a presumption of verity and cannot be refuted by belated contrary claims of dissatisfaction and threats. *See Blackledge*, 431 U.S. at 74.

11

Because Smith has failed to demonstrate that his counsel was operating under an actual conflict that affected counsel's performance,[5] his first ground for relief is denied.

### B. Effectiveness During Plea Process (Ground Three)

In Ground Three, Smith alleges that Sims Jackson neglected her duty to consult with him regarding important decisions relating to the plea process. (Doc. No. 58, at 7; *see* Doc. No. 58-1, at 16–23.) Specifically, Smith claims that counsel: (1) "failed to advise [Smith], prior to entering a plea of guilty, that 18 U.S.C. § 924(c) authorized heightened criminal penalties"; (2) failed to inform him that, by pleading guilty to a violent crime, he would be "ineligible to participate in [certain] recidivism reduction programs under the First Step Act"; and (3) failed to advise him that he could file a motion to withdraw his guilty plea prior to sentencing. (Doc. No. 58, at 7.)

"A guilty plea is open to attack on the ground that counsel did not provide the defendant with 'reasonably competent advice.'" *Cuyler*, 446 U.S. at 344 (quoting *McMann v. Richardson*, 397 U.S. 759, 770–71, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970)). As noted, the same two-part standard for ineffectiveness announced in *Strickland* applies to representation during the guilty plea process. *See Hill*, 474 U.S. at 58–59. To show prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id*. at 59.

---

[5] The only performance-based allegation Smith lodges against counsel is that she failed to file a motion to suppress as requested. (*See* Doc. No. 58-1, at 10–11 ¶¶ 30–31.) Yet, he does not explain the basis for such a motion, other than to state generally that he believed that "his constitutional right against unreasonable searches and seizures was violated by [the] police." (*Id*. at 10 ¶ 30.) It is well settled that an attorney is under no obligation to file a meritless motion. *See Goff v. Bagley*, 601 F.3d 445, 469 (6th Cir. 2010) (concluding that counsel was not ineffective for failing to raise a frivolous argument). Without factual development of this argument, the Court cannot determine whether counsel's failure to file the motion was ineffective or whether any perceived conflict (which, in any event, the Court finds none) adversely affected counsel's performance. *See Thomas v. United States*, 849 F.3d 669, 679 (6th Cir. 2017) (noting that perfunctory and undeveloped arguments, "unaccompanied by some effort at developed argumentation[,]" are waived (citation omitted)).

### 1.  18 U.S.C. § 924(c) Penalties

While Smith claims that his counsel failed to discuss with him the penalties associated with the firearm charge under § 924(c), he is bound by his sworn representations to the Court's inquires at the change of plea hearing establishing that quite the contrary is true. *See Blackledge*, 431 U.S. at 74; *see also Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir. 1999) (noting that, were a defendant not bound by his representation in open court, the plea colloquy process would be rendered meaningless). After placing Smith under oath and confirming that he was voluntarily waiving his Fifth Amendment rights, the Court reviewed with Smith the rights he was giving up by pleading guilty—including the right to require the government to prove him guilty by competent evidence beyond a reasonable doubt—and he confirmed that he understood those rights. (Doc. No. 25, at 13–16.) Smith was asked if he had received a copy of the Indictment, to which he replied that he had. (*Id.* at 16.) The Court then asked Smith whether he had "discussed with [his] lawyer the charges in the [I]ndictment to which [he] intend[ed] to plead guilty[.]" (*Id.*) Smith responded: "Yes, sir." (*Id.*)

Under Fed. R. Crim. P. 11(b)(1)(G), the district court must inform the defendant of "the nature of each charge to which the defendant is pleading[.]" The "district court must be satisfied, after discussion with the defendant in open court, that the defendant understands the elements of the offense." *United States v. Lalonde*, 509 F.3d 750, 575 (6th Cir. 2007) (quoting *United States v. McCreary-Redd*, 475 F.3d 718, 723 (6th Cir. 2007) (further quotation marks and citation omitted)). "At a minimum, the defendant must understand the 'critical' or 'essential' elements of the offense to which he or she pleads guilty." *United States v. Valdez*, 362 F.3d 903, 909 (6th Cir. 2004) (citations omitted). "Where a defendant is represented by competent counsel, the court

13

usually may rely on that counsel's assurance that the defendant has been properly informed of the nature and the elements of the charge to which he is pleading guilty." *Bradshaw v. Stumpf*, 545 U.S. 175, 183, 125 S. Ct. 2398, 162 L. Ed. 2d 143 (2005). "And '[t]he Supreme Court has suggested that providing the defendant with a copy of the indictment prior to his plea of guilty creates a presumption that the defendant was informed of the nature of the charge against him.'" *United States v. Kerns*, 9 F.4th 342, 348 (6th Cir. 2021) (quoting *Lalonde*, 509 F.3d at 760 (citing *Bousley v. United States*, 523 U.S. 614, 618, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998))). Here, the Court confirmed with Smith that he had received a copy of the Indictment, and that he had discussed it with his attorney. "A representation on the record that defense counsel has explained the indictment is sufficient to show that a defendant had notice of the charges against him." *United States v. Thomas*, No. 24-3205, 2025 WL 417001, at *3 (6th Cir. Feb. 6, 2025) (citing *Marshall v. Lonberger*, 459 U.S. 422, 436, 103 S. Ct. 843, 74 L. Ed. 2d 646 (1983) (further citation omitted)).

But the Court's inquiry did not end there. The Court also asked the government's attorney to review on the record the maximum statutory penalties for each count, including the mandatory minimum of five years for the § 924(c) charge, after which Smith indicated that he understood the statutory penalties. (*Id*. at 16–18.) Then, after confirming that Smith had discussed with his counsel the federal sentencing guidelines and how they might apply in his case, the Court asked the parties to discuss the applicability of the federal sentencing guidelines and provide their estimates of the advisory sentencing range, based on possible factual scenarios. (*Id*. at 20–22.)

Relevant to the present motion, defense counsel specifically noted that there was a concern that Smith would qualify as a career offender under the guidelines. (*Id*. at 21–22.) She explained that, if Smith was found to be a career offender, his conviction for the § 924(c) firearm charge

14

would result in a base level offense 37. (*Id.* at 21.) At a criminal history category VI, she explained that a potential guideline range would be 262 to 327 months. (*Id.* at 21–22.) The government's attorney added that "Count 4 [the § 924(c) charge] is a mandatory term of incarceration of five years, *which must run consecutive to any other sentence*, including the guideline range that Ms. Sims Jackson has already spoken about. And I know that she's advised her client of that." (*Id.* at 22 (emphasis added).) Sims Jackson stated on the record that she had previously discussed with Smith that the Count 4 mandatory sentence would run consecutive to any other sentence under the guidelines, and Smith confirmed that his attorney had discussed this with him. (*Id.* at 23.)[6]

As Smith conceded during the plea colloquy, his counsel discussed with him the possible penalties that might apply in his case, including the nature of the penalty associated with his § 924(c) charge and the guideline range (262 to 327 months) that may apply if Smith was determined to be a career offender. His suggestion that counsel failed to discuss this matter with him is belied by the record.

Moreover, the Court revisited all these matters during the plea colloquy. "When an ineffective-assistance claim is based on misleading information regarding the consequences of a plea, a proper plea colloquy is generally deemed to cure any misunderstanding the defendant may have had about the consequences of the plea." *United States v. Pola*, 703 F. App'x 414, 423 (6th Cir. 2017) (citing *Ewing v. United States*, 651 F. App'x 405, 410 (6th Cir. 2016) (further citation omitted)); *see Thompson v. United States*, 728 F. App'x 527, 535 (6th Cir. 2018) (approving of the observation that the "Sixth Circuit has consistently upheld the validity of the plea-colloquy

---

[6] Specifically, the Court asked Smith if he had been advised by his attorney of the "consecutive nature of Count 4 being a five year mandatory minimum to life[.]" (*Id.*) Smith answered: "Yes, sir." (*Id.*)

15

advisement of rights to preclude later claims of misunderstanding alleged to result from misleading advice").

"[W]here the court has scrupulously followed the required [Rule 11] procedure, the defendant is bound by his statements in response to the Court's inquiry." *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986). The Court scrupulously followed the Rule 11 procedure and Smith is bound by his sworn statements made in response to the Court's inquiries. Based on the record, Smith cannot claim in good faith that he did not understand the penalties associated with his firearm charge under § 924(c), nor that his plea was anything other than an intelligent, knowing, and voluntary waiver of his constitutional rights.

### 2. *Eligibility for BOP Time Credit Programs*

Smith also claims that his counsel failed to advise him that, by pleading guilty to the § 924(c) firearm charge, he would be ineligible to receive certain time credits under the First Step Act of 2018 ("FSA"). (Doc. No. 58-1, at 20–21.) As noted, the Supreme Court in *Hill* extended the *Strickland* effectiveness standard to the plea process. *Hill*, 474 U.S. at 57–58 (observing that although the decision in *Strickland* "dealt with a claim of ineffective assistance of counsel in a capital sentencing proceeding . . . the same two-part standard seems to us applicable to ineffective-assistance claims arising out of the plea process"). But the Supreme Court in *Hill* "explicitly left open" the question of whether "advice about a matter deemed collateral violates the Sixth Amendment." *Chaidez v. United States*, 568 U.S. 342, 349–50, 133 S. Ct. 1103, 185 L. Ed. 2d 149 (2013). *Hill* thus "left the state and the lower federal courts to deal with the issue; and they almost unanimously concluded that the Sixth Amendment does not require attorneys to inform their clients of a conviction's collateral consequences[.]" *Id.* at 350.

A direct consequence of a plea is one when the "result flowing from the plea is definite, immediate, and automatic." *King v. Dutton*, 17 F.3d 151, 154 (6th Cir. 1994) (citations omitted). Collateral consequences of the plea, on the other hand, are consequences outside the court's control at sentencing. *El-Nobani v. United States*, 287 F.3d 417, 421 (6th Cir. 2002) (citation omitted). The United States Bureau of Prisons ("BOP") is responsible for administering the earned time credits through the FSA. *See Shurelds v. Zouhary*, No. 3:22-cv-1199, 2023 WL 2413789, at *1 (N.D. Ohio Feb. 17, 2023) ("The responsibility for computing sentences and applying sentencing credits lies with the [BOP]." (citation omitted)). Because such matters are beyond the control of the sentencing court, it is a collateral matter that counsel need not discuss during the plea process. *See also Reeves v. Floyd*, 2:19-cv-13484, 2020 WL 4530444, at *5 (E.D. Mich. Aug. 6, 2020) ("The Sixth Circuit has repeatedly held that parole eligibility is not a direct consequence of a plea of which a defendant must be advised." (collecting Sixth Circuit decisions)). Accordingly, the failure of counsel to discuss this collateral consequence of the guilty plea cannot support a claim of ineffective assistance of counsel. *See Fishback v. Parris*, No. 3:12-cv-130, 2018 WL 705632, at *2 (M.D. Tenn. Feb. 2, 2018) (concluding that "counsel's failure to advise [petitioner] on his eligibility for good time credits is not constitutionally deficient").

### 3. *Withdrawing a Guilty Plea*

Finally, Smith complains that Sims Jackson failed to advise him that he could file a motion to withdraw his guilty plea prior to sentencing. (Doc. No. 58-1, at 22–23.) He argues that "given the numerous deficiencies in counsel's representation, there is a reasonable probability that [Smith] would have indeed filed a motion to withdraw his guilty plea based on a conflict of interest with his attorney." (*Id*. at 23.)

Rule 11(d) of the Federal Rules of Criminal Procedure provides, in part, that the court may permit a plea to be withdrawn after the guilty plea hearing and before sentencing if "the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). Smith has failed to identify any "fair and just" reason that would have warranted a plea withdrawal. As the Court has already determined, his counsel was not operating under an actual conflict during her representation of him. Further, Smith's vague reference to "numerous deficiencies in counsel's representation" is so perfunctory and undeveloped that it fails to state a viable claim for relief under § 2255. *See Thomas v. United States*, 849 F.3d 669, 679 (6th Cir. 2017) (noting that it is well settled that perfunctory and undeveloped arguments, "unaccompanied by some effort at developed argumentation[,]" are waived).

Moreover, none of the factors that courts typically consider when determining whether to permit a defendant to withdraw his plea—including the existence of any claim of innocence, the circumstances of the guilty plea, the defendant's background, and the defendant's experience with the criminal justice system—would have supported such a motion. *See United States v. Quinlan*, 473 F.3d 273, 276–77 (6th Cir. 2007) (setting forth a non-exhaustive list of factors to consider when ruling on a motion to withdraw a guilty plea). Any subsequent claims of innocence would have been belied by his responses during the plea colloquy (*see* Doc. No. 25) and in his post-guilty plea interview with U.S. Pretrial Services & Probation (*see* Doc. No. 41, at 5 ¶ 14), and Smith's extensive history with the criminal justice system would have demonstrated that he "understood the ramifications of his guilty plea." *See United States v. Brown*, 752 F. App'x 309, 315 (6th Cir. 2018) (finding that the district court did not err in considering defendant's extensive criminal history in state court in denying motion to withdraw guilty plea). Counsel cannot be considered

18

ineffective for failing to file a meritless motion to withdraw. *See, e.g., United States v. Bradley*, No. 20-cr-20489, 2024 WL 385007, at *4 (E.D. Mich. Jan. 31, 2024) (rejecting ineffective assistance of counsel claim based on failure to file a motion to withdraw, noting that "[n]othing before the Court demonstrates that had a motion for withdrawal of plea been brought, that it would have been successful").[7]

Because Smith has failed to demonstrate that he received ineffective assistance from Sims Jackson during the plea process, Ground Three is denied.

### C. Effectiveness During Sentencing[8] (Ground Two)

Smith's second ground for relief is far from clear. Without explanation as to why the FSA applied to him, Smith appears to argue that then-First Assistant FPD Johnson was constitutionally ineffective at sentencing because she failed to advocate for the application of the "safety valve" to his sentencing calculation. (*See generally* Doc. No. 58-1, at 14–16; *see id*. at 15 ¶ 45.) Counsel was not ineffective for failing to argue in favor of safety valve consideration for the simple reason that Smith was not eligible for such relief. *See, e.g., Estey v. United States*, No. 3:17-cr-170, 2022 WL 19914553, at *7 (W.D. Ky. Nov. 17, 2022) ("Movant was not eligible for 'safety valve' sentencing, and counsel was not ineffective for not pursuing the matter.")

---

[7] Of course, Smith does not aver that he ever requested to withdraw his guilty plea, or that he ever raised the issue with counsel. "An attorney's failure to move to withdraw a defendant's plea does not constitute ineffective assistance when the defendant does not clearly make such a request." *Bradley*, 2024 WL 385007, at *4 (citation omitted).

[8] Smith's second ground amounts to an attack upon the Court's application of the federal sentencing guidelines. Non-constitutional challenges to the guidelines are typically not subject to collateral attack under § 2255. *See Snider v. United States*, 908 F.3d 183, 191 (6th Cir. 2018) ("We note that, although not without dissent, every other court of appeals to have looked at the issue has agreed that a defendant cannot use a § 2255 motion to vindicate non-constitutional challenges to advisory guideline calculations.") To the extent Smith argues that the alleged sentencing errors were the result of ineffective assistance of counsel, however, the Court will, in an abundance of caution, reach the merits of what would otherwise be non-cognizable arguments. *See Grant v. United States*, 72 F.3d 503, 505–06 (6th Cir. 1996).

The FSA amended subsection (1) of the safety valve statute, 18 U.S.C. § 3553(f)(1), to direct a district court to provide a sentence pursuant to the guidelines, "without regard to any statutory minimum sentence," upon the government's recommendation, if, among other requirements, the defendant does not have (A) "more than 4 criminal history points, excluding any criminal history points resulting from a 1-point offense . . . "; (B) "a prior 3-point offense . . . "; and (C) "a prior 2-point violent offense[.]"

Smith was not eligible for safety valve consideration under § 3553(f)(1). First, excluding 1-point offenses, Smith had more than 4 criminal history points. In total, Smith had 14 criminal history points, and none of the crimes assessed scored only 1 point. (*See* Doc. No. 41, at 11–17 ¶¶ 41, 44–45, 47, 49–50.) Second, Smith had 4 prior 3-point offenses, well above the 1 prior offense required for disqualification. (*See id*. at 11-17 ¶¶ 41, 44–45, 49.) Smith was clearly ineligible under § 3553(f)(1), regardless of whether crack cocaine was involved in one of his prior drug trafficking convictions or in the present case.

Additionally, Smith would have been ineligible for "safety valve" because he possessed a firearm in connection with the present offenses. Safety valve consideration is unavailable when the defendant "possesses a firearm or other dangerous weapon . . . in connection with the offense[.]" 18 U.S.C. § 3553(f)(2). At the time of his arrest, Smith advised the officers that there was a firearm in his vehicle. (*See* Doc. No. 41, at 5 ¶ 10.) He eventually pleaded guilty to two weapons offenses, including using or carrying a firearm during and in relation to a drug trafficking crime (i.e., the § 924(c) offense). (*See* Doc. No. 25, at 27–31.) His possession of a weapon during his drug offenses also serves to disqualify him from safety valve consideration.

Smith's suggestion that his conviction in Count 1 for possession with intent to distribute a

controlled substance erroneously resulted in the imposition of a mandatory minimum sentence is also incorrect. (*See* Doc. No. 58-1, at 15 ¶ 46.) Smith was charged in Count 1 with violating 18 U.S.C. §§ 841(a)(1) and (b)(1)(C). (Doc. No. 1, at 1.) Although punishable by a maximum penalty of 20 years, this offense carries no mandatory minimum and none was applied for this offense.

Finally, Smith contends that he was improperly determined to be a career offender because the prior drug offense that was used to enhance his sentence involved crack cocaine. (Doc. No. 58-1, at 15–16 ¶ 47.) Noting that the FSA reduced the sentencing disparity between crack cocaine and powder cocaine offenses, Smith argues that he "became unfit to be career enhanced, since his predicated [sic] offense occurred nine months before the expired date of 15 years, which squarely falls within the FSA." (*Id.*) Once again, Smith is mistaken.

The PSR clearly provides that Smith received a Chapter Four Enhancement as a career offender under U.S.S.G. § 4B1.1(b)(3) because he was: (i) at least 18 years old at the time of the instant offense; (2) the instant offense is a felony that is either a crime of violence or a controlled substance offense; and (3) Smith had at least two prior convictions that are controlled substance offenses. (*See* Doc. No. 41, at 7 ¶ 24.) In particular, the PSR concluded that Smith had a 2000 conviction for possession with intent to distribute cocaine and a 2009 conviction for drug trafficking. (*Id.*)

Section 4B1.2(b) defines a "controlled substance offense" as: "an offense under federal or state law, punishable by imprisonment for a term exceeding one year that . . . prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance . . . or the possession of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense[.]" U.S.S.G. § 4B1.2(b). As the government correctly observes, this section makes no

distinction for certain types of controlled substances. Cocaine, whether in the form of powder or crack, remains a controlled substance for purposes of § 4B1.2(b). Smith was properly classified as a career offender, and counsel cannot be considered ineffective for failing to argue otherwise. *See Jalowiec v. Bradshaw*, 657 F.3d 293, 321–22 (6th Cir. 2011) (recognizing that an "attorney is not required to raise a non-meritorious claim" (citation omitted)).

Notwithstanding the appropriateness of his career offender status, counsel did effectively advocate for a sentence reduction. During the sentencing hearing, counsel was able to successfully argue in favor of a downward variance based on Smith's age, his unfortunate childhood, and his desire for rehabilitation. (Doc. No. 52, at 12–20.) In the end, counsel was able to achieve a downward variance that resulted in a 51-month reduction from the low-end of the guideline range for her client. (*See id.* at 30.) There is nothing in counsel's performance at sentencing that would give rise to a viable claim of ineffectiveness.

Because Smith has failed to demonstrate that he received ineffective assistance from his counsel at sentencing, Ground Two is denied.

## IV.    CONCLUSION

For the foregoing reasons, Smith's motion to vacate, set aside, or correct his sentence (Doc. No. 58) is denied. Further, for the same reasons, the Court concludes that "jurists of reason" would not find it "debatable whether the petition states a valid claim of the denial of a constitutional right" or that the Court's findings that some of his claims are alluded to in a perfunctory manner, thus precluding further review, are "correct[.]" *See Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000). Additionally, the Court has detailed above why Smith's grounds for relief are otherwise belied by the record such that "reasonable jurists" would not debate

the Court's denial of his motion to vacate. *See Slack*, 529 U.S. at 484. Accordingly, the Court

certifies that an appeal from this decision could not be taken in good faith, and that there is no

basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

**IT IS SO ORDERED**.

Dated: May 26, 2026

HONORABLE SARA LIOI
CHIEF JUDGE
UNITED STATES DISTRICT COURT